```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    NORTHERN DIVISION
```

LOU PARKER AS TRUSTEE
OF THE MELBA W. PARKER
REVOCABLE TRUST                                      PLAINTIFF

VS.                      CIVIL ACTION NO. 3:13-cv-867(DCB)(MTP)

MISSISSIPPI FARM BUREAU
CASUALTY INSURANCE COMPANY                           DEFENDANT


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on the defendant Mississippi Farm Bureau Casualty Ins. Co. ("Farm Bureau")'s motion for summary judgment **(docket entry 83)**. Having carefully considered the motion and response, as well as the memoranda and applicable law, and being fully advised in the premises, the Court finds as follows:

The plaintiff in this case, Lou Parker ("Parker"), is the trustee of the Melba W. Parker Revocable Trust, created under the laws of the State of Mississippi. Melba W. Parker was an adult resident citizen of Warren County, Mississippi, at the time of her death in July of 2011. She deeded her home located at 21533 Highway 465, Vicksburg, Mississippi, to the Trust on July 14, 2000.

The plaintiff's Second Amended Complaint ("Complaint") alleges that on April 25, 2011, the plaintiff contacted an insurance agent about the possibility of obtaining flood insurance on his home and the Trust Property (located approximately 200 yards from his home)(collectively, "the Parker property"), in connection with obtaining a loan secured by the Parker property. The plaintiff

advised his agent, Jackie Jenkins, that he needed immediate flood insurance because he feared a flood could be imminent. Complaint, ¶¶ 5, 7.

Jenkins made four phone calls to Farm Bureau managers, claims personnel, and underwriting specialists to determine whether Farm Bureau could issue a policy that would provide Parker coverage. In response to each call, Farm Bureau advised Jenkins that he could write the policy. On April 27, 2011, Jenkins inspected and photographed the property. Jenkins informed Parker that the policy would be immediately effective upon the closing of the loan transaction. Complaint, ¶¶ 10-14.

The Parker loan closed on May 5, 2011, and Parker paid the insurance premium as part of the closing, at which time the policy, providing $250,000 in total coverage, became effective. Complaint, ¶¶ 16-17. Parker claims that his property suffered flood damage on May 17, 2011, in an amount exceeding $250,000. Complaint, ¶ 18.

Parker filed an insurance claim with Farm Bureau. On July 19, 2012, the claim was denied based on a policy exclusion for a "flood in progress" when the policy was issued. Complaint, ¶ 20. Parker appealed the denial to the Federal Emergency Management Agency ("FEMA"), which also denied his claim based on the "flood in progress" exclusion. Complaint, ¶ 22.

Parker's First Amended Complaint, brought against the United States of America by and through FEMA, and Farm Bureau, for failure

to provide coverage under a flood insurance policy, was dismissed with prejudice against the United States by and through FEMA on grounds of sovereign immunity.  The plaintiff filed a motion for summary judgment, requesting that the Court find that Farm Bureau had a contractual obligation to provide flood insurance coverage to the plaintiff.  Farm Bureau filed a motion for summary judgment seeking a ruling by the Court that Farm Bureau did not owe coverage to the plaintiff, based on the plaintiff's failure to comply with the requirements of the policy.  On March 26, 2013, the Court entered its Opinion and Order on the parties' motions for summary judgment, denying the plaintiff's motion and granting the defendant's motion.  However, the Court also found that the plaintiff was attempting to bring state law claims related to the procurement of the policy, and allowed the plaintiff to file the present Second Amended Complaint ("Complaint").

The present Complaint asserts claims for negligent misrepresentation (Count I), fraudulent misrepresentation (Count II), negligence (Count III), and punitive damages (Count IV). After additional discovery, Farm Bureau filed the motion for summary judgment presently before the Court.

In deciding the defendant's motion for summary judgment, the Court follows the standard set forth in Fed.R.Civ.P. 56(c), as interpreted by the United States Supreme Court:

> [A] party seeking summary judgment always bears the
> initial responsibility of informing the district court of

>the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  After the moving party has met this initial burden, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Fed.R.Civ.P. 56(e), however, does not permit the nonmoving party to avoid summary judgment by resting on the pleadings, but "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324.  Moreover, the mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on which the jury could reasonable find for the non-movant.  Anderson, 477 U.S. at 251-52.

 The elements of a negligence claim are "duty, breach of duty, proximate cause, and damages."  Mladineo v. Schmidt, 52 So.3d 1154, 1162 (Miss. 2010).

 In order to establish negligent misrepresentation, the plaintiff must prove: "(1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence

4

failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance." Horace Mann Life Ins. Co. v. Nunaley, 960 So.2d 455, 461 (Miss. 2007).

The elements of a fraudulent misrepresentation claim are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. Spragins v. Sunburst Bank, 605 So.2d 777, 780 (Miss. 1992).

"Punitive damages are appropriate only in cases where the plaintiff shows by clear and convincing evidence that the defendant acted with malice, gross negligence evidencing willful, wanton, or reckless disregard for the safety of others, or the commission of actual fraud." Estate of Gibson, 91 So.3d 616, 629 (Miss. 2012).

The National Flood Insurance Program ("NFIP") was created in 1968 by the National Flood Insurance Act ("NFIA") "in order to make it more economic for the private insurance industry to make flood insurance available to those who need it, 'on reasonable terms and conditions.'" Azoulay v. Allstate Ins. Co., 2013 WL 15596017, at

5

\*2 (D. Conn. Oct. 11, 2013)(quoting 42 U.S.C. § 4001(b)).  NFIP is administered by FEMA and the Federal Insurance Administration ("FIA"), and is "'supported by the federal treasury, which pays for claims that exceed revenues collected by private insurers from flood insurance premiums.'"  Id. (quoting Palmieri v. Allstate Ins. Co., 445 F.3d 179, 183 (2d Cir. 2006)(further citation omitted)). Therefore,  "'an insured's flood insurance claims are ultimately paid by FEMA.'"  Id. (quoting Gibson v. Am. Bankers Ins. Co., 289 F.3d 943, 947 (6th Cir. 2002)(further citation omitted)).

> FEMA promulgated the Standard Flood Insurance Policy ("SFIP"), which establishes the rights and responsibilities of the insurers and insureds under a flood insurance policy.  Consumers have the option of purchasing a SFIP from the federal government directly or from private insurance companies known as "Write-Your-Own" carriers ("WYO").  Muncy v. Selective Ins. Co. of Am., 2007 WL 2229224, at \*1 (E.D. Ky. July 31, 2007). The WYOs merely act as fiscal agents of the United States.  WYOs cannot alter the SFIP, and the U.S. Treasury remains the underwriter for the SFIP.  See 42 U.S.C. § 4017(d); 44 C.F.R. § 62.23(f).  In this way, WYOs are simply a conduit through which citizens may purchase flood insurance, but premiums are still paid to and claims paid from the United States government coffers.  See 42 U.S.C. § 4017(d).

Fadel v. Nationwide Mut. Fire Ins. Co. ("Fadel I"), 2012 WL 5878728, at \*1 (W.D. Ky. Nov. 21, 2012)(footnote omitted).

In this case, Farm Bureau was a WYO that sold an SFIP to the plaintiff on May 5, 2011.  On May 12, 2011, flood waters reached the plaintiff's property.  See Defendant's Exhibit D.  On May 17, 2011, FEMA issued Bulletin w-11030, stating:  "FEMA does not interpret the Section V (B) exclusion as being triggered only when

6

floodwaters physically touch the insured building." <u>See</u> Defendant's Exhibit E.  Farm Bureau, in turn, notified the plaintiff's insurance agent of Bulletin w-11030, and the agent directed Farm Bureau to issue the SFIP as requested.  <u>See</u> Defendant's Exhibit B.  On May 19, 2011, Farm Bureau issued the Declarations Page (UW 13-14) with an effective date of May 5, 2011.  On June 20, 2011, FEMA issued Bulletin w-11039, setting forth the flood-in-progress date for Warren County as April 25, 2011.  <u>See</u> Defendant's Exhibit C.

Following FEMA's subsequent issuance of Bulletin w-11039, stating that the community of Warren County was under a "flood in progress" as of April 25, 2011, Farm Bureau denied the plaintiff's flood insurance claim based upon the "flood in progress" exclusion in the policy, and in light of FEMA's interpretation of its SFIP in the context of FEMA's Bulletins.  As a WYO carrier, Farm Bureau is authorized to market, sell, issue, process claims and defend litigation under the SFIP, but all activities are federally regulated, and Farm Bureau must comply with FEMA's agency standards and guidelines:

> 1. The Company shall comply with written standards, procedures, and guidance issued by FEMA or FIA relating to the NFIP and applicable to the Company.
>
> 2. The Company shall market flood insurance policies in a manner consistent with marketing guidelines established by FIA.

44 C.F.R. Pt. 62, App. A, Art. II.  Thus, Farm Bureau was required

to market and sell the SFIP in accordance with FEMA's and FIA's guidelines and regulations. As explained in Bulletin w-11045, the WYO carrier was required to continue marketing and selling SFIPs because there was always the possibility of an intervening covered flooding event. The Court notes that the NFIP was the plaintiff's only option for obtaining flood insurance, inasmuch as there are no alternatives. <u>Griffith v. State Farm Fire & Cas. Co.</u>, 2010 WL 231743, at *2 (W.D. La. Jan. 14, 2010).

Furthermore, the United States Supreme Court has established that "everyone is charged with knowledge of the United States Statutes at Large," and "the appearance of rules and regulations in the Federal Register gives legal notice of their contents." <u>Fed. Crop Ins. Corp. v. Merrill</u>, 332 U.S. 380, 384-85 (1947). In addition, all courts are under a duty "to observe the conditions defined by Congress for charging the public treasury." <u>Id</u>. at 385. In <u>Heckler v. Cmty. Health Servs. of Crawford Cnty.</u>, 467 U.S. 51 (1984), the Supreme Court held that

> [p]rotection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law .... This is consistent with the general rule that those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.

<u>Id</u>. at 63.

The Fifth Circuit Court of Appeals has reasoned that because those who deal with the government are required to know the law, "the special nature of the insurance relationship ... charges the

8

insured with the duty of understanding the SFIP so that he may deal appropriately with the government and its appointed agents." Richmond Printing LLC v. Dir. of Fed. Emergency Mgmt. Agency, 72 F.Appx. 92, 97-98 (5th Cir. 2003). Thus, "individuals seeking to utilize federal insurance programs are charged with the knowledge of the contours of those programs." Fadel v. Nationwide Mut. Fire Ins. Co. ("Fadel II"), 2013 WL 1337390, at *3 (W.D. Ky. March 29, 2013)(citing Richmond Printing, 72 F.Appx. at 98).

In Larmann v. State Farm Ins. Co., 2005 WL 357191 (E.D. La. Feb. 11, 2005), the district court held that "all citizens are charged with the knowledge of the law regarding federal insurance programs" (id. at *4); and in Griffith, the court held that insureds "are deemed to have constructive knowledge of the thirty-day waiting period and all other provisions under the NFIP." 2010 WL 231743, at *3 (emphasis added).

The Mississippi Supreme Court has held that "insureds are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy. Any alleged oral agreement ... does not have any effect on the written insurance contract." Stephens v. Equitable Life Assurance Soc'y of U.S., 850 So.2d 78, 83 (Miss. 2003). Further, a contracting party "will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." Id. (quoting

<u>Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.</u>, 584 So.2d 1254, 1257 (Miss. 1991)).

In <u>Taylor v. S. Farm Bureau Cas. Co.</u>, 954 So.2d 1045 (Miss.Ct.App. 2007), the Mississippi Court of Appeals held that "'[u]nder Mississippi law, there is no fiduciary relationship or duty between an insurance company and its insured in a first party insurance contract.'" <u>Id</u>. at 1049 (quoting <u>Langston v. Bigelow</u>, 820 So.2d 752, 756 (Miss.Ct.App. 2002)).

With regard to SFIPs, the federal regulations provide:

> The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the duly licensed property or casualty <u>agent acts for the insured</u> and does <u>not</u> act as agent for the Federal Government, the Federal Emergency Management Agency, or <u>the [WYO carrier]</u>.

44 C.F.R. § 61.5(e)(emphasis added). The Tenth Circuit Court of Appeals has interpreted the regulation as follows:

> By creating the legal fiction that an insurance agent "acts for the insured," instead of for her employer (the private insurance company), § 61.5(e) shields the private insurance company from liability for certain of the agent's tortious acts. Whether this is good public policy because it makes participation in the NFIP more attractive to private insurance companies, or bad public policy because it may result in injustice for some insureds, is not for us to decide. The objective of federal law, as evinced by 44 C.F.R. § 61.5(e) is clear, and we cannot ignore it.

<u>Remund v. State Farm Fire and Cas. Co.</u>, 483 Fed.Appx. 403, 408 (10th

10

Cir. 2012)(footnotes omitted). The appellate court also noted that because the agent acted for the insured, the insured and the agent "were, together, one party to the insurance contract while State Farm, as fiscal agent of the United States, was the other party." Id. at 410.

To the extent that the plaintiff attempts to impute Jenkins' allegedly tortious acts to Farm Bureau, such an attempt fails because the "structure of the NFIP precludes the imputation of any claims against [the insurance agent] to [the insurance company]." Bull v. Allstate Ins. Co., 649 F.Supp.2d 529, 541 (W.D. La. 2009). The plaintiff would still be allowed to sue his own agent in a state law tort action (see WYO Program Bull. No. W-09038), but Parker did not name Jenkins as a defendant in this case.

In any event, the plaintiff cannot recover from Farm Bureau because he has failed to show that he reasonably relied on any representations by Farm Bureau with respect to the scope of coverage afforded under the SFIP contract issued to him. The plaintiff "had constructive notice of the policy terms ... [and is charged] with the duty of understanding the terms of the SFIP so that he may deal appropriately with the government and its appointed agents." Richmond Printing, 72 Fed.Appx. at 98. It does not matter if the plaintiff never received a copy of the policy, because "the SFIP is published in its entirety in the CFR." Id.; see also Griffith, 2010 WL 231743, at *4 (the CFR is "an additional

outlet ... to turn to obtain information about the terms of the policy"). "[T]he insured is charged with the constructive knowledge of the provisions of the SFIP 'regardless of actual knowledge of what is in the regulations or of the hardship resulting from ignorant innocence.'" Larmann, 2005 WL 357191, at *5 (quoting Fed. Crop Ins., 332 U.S. at 385). "[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." Heckler, 467 U.S. at 63.

Therefore, the plaintiff's claims for negligent misrepresentation and fraudulent misrepresentation fail because he cannot establish reasonable reliance. Likewise, his claim for negligence fails because the defendant did not owe the plaintiff the duty he asserts. Finally, in the absence of any liability, the plaintiff cannot assert a claim against the defendant for punitive damages. The Court therefore finds that the defendant's motion for summary judgment is well-taken. Accordingly,

IT IS HEREBY ORDERED that defendant Mississippi Farm Bureau Casualty Insurance Company's motion for summary judgment **(docket entry 83)** is GRANTED. A final judgment dismissing this action with prejudice shall follow.

SO ORDERED, this the 30th day of January, 2014.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE